UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL S.,<br>    Plaintiff,<br> v.<br>KILOLO KIJAKAZI, et al.,<br>    Defendants. | Case No. 23-cv-02010-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 12, 14 |

Plaintiff Paul S. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied his application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 12.] The Commissioner cross-moves to affirm. [Docket No. 14.] For the reasons stated below, the court grants Plaintiff's motion and denies the Commissioner's motion.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on August 25, 2020, alleging disability beginning September 20, 2019. Administrative Record ("A.R.") 195-97. The application was initially denied on January 25, 2021 and again on reconsideration on April 28, 2021. A.R. 118-22, 128-34. An Administrative Law Judge ("ALJ") held a hearing by video on December 6, 2021 and issued an unfavorable decision on March 11, 2022. A.R. 35-77, 13-28. The ALJ determined that Plaintiff has the following severe impairments: chronic fatigue syndrome and headaches. A.R. 19. The ALJ found that Plaintiff retains the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can occasionally perform postural activities but can never

> climb ladders, ropes or scaffolding. For safety reasons, the individual should not work at heights or with heavy or hazardous machinery. The individual should not do any professional driving. The individual is limited to performing simple, routine tasks equivalent to unskilled work with a maximum SVP of 2. The individual could not perform fast paced production work (such as assembly work off an assembly line but work that must be finished by the end of the day).

A.R. 20. Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could perform other jobs existing in the economy, including dining room attendant, kitchen helper, and sandwich maker, the ALJ concluded that Plaintiff is not disabled. A.R. 28.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

**II.    ISSUES FOR REVIEW**

   1.   Did the ALJ err in evaluating Plaintiff's credibility?

   2.   Did the ALJ err in weighing the medical evidence?

**III.   STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quotation omitted)). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

1  F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's
2  decision for harmless error, which exists when it is clear from the record that the ALJ's error was
3  inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d
4  1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. DISCUSSION

Plaintiff first argues that the ALJ erred in assessing his credibility.

### A. Legal Standard

In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

The determination of whether to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted).  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical

evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). "The clear and convincing standard is the most demanding required in Social Security cases," *id*., and ultimately "requires an ALJ to show [their] work[.]" *Ferguson*, 95 F.4th at 1199 (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Id*. (citing *Lingenfelter*, 504 F.3d at 1040).

### B.     Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." A.R. 26. Notably, the ALJ did not identify which of Plaintiff's symptoms "could reasonably be expected" to be caused by his severe impairments of chronic fatigue syndrome and headaches. Nonetheless, the ALJ provided four reasons for discounting Plaintiff's testimony about his symptoms: 1) that "[t]he record reflects improvement in [Plaintiff's] condition"; 2) that Plaintiff "fail[ed] to follow medical recommendations"; 3) that the testimony is "inconsistent with medical evidence of record"; and 4) that the testimony is inconsistent with Plaintiff's activities of daily living. A.R. 26.

The first reason, improvement in Plaintiff's condition, is not a specific, clear and convincing reason for discounting Plaintiff's testimony. In support of this reason, the ALJ wrote that Plaintiff reported in November 2019 "that his symptoms were better since his depression was treated," and that Plaintiff testified at the hearing that his therapist "found that he no longer needed

4

one on one therapy in the Spring of 2021." A.R. 26 (citing A.R. 464). The ALJ also wrote that in September 2021, Plaintiff "reported a slight increase in energy, which he was hopeful about" and that he "denied joint pains" in April 2021. A.R. 26 (citing A.R. 1055, 859). The ALJ did not explain how isolated instances of reports of improvement, including improvements in his mental health, undermine Plaintiff's testimony about the symptoms of his severe impairments, particularly since the ALJ did not identify any particular testimony about symptoms that the records undermine. Additionally, although Plaintiff testified that the therapist that he began seeing through Kaiser in 2018 "determined [he] no longer needed one on one care" in spring 2021, he also testified that he now has "better [healthcare] benefits" and is currently seeing a therapist once per week. A.R. 65-66. Moreover, the ALJ's characterization of the some of the notes cited in the opinion notes is incomplete and/or inaccurate. The September 2021 note about Plaintiff's "slight increase in energy" is from a record of Plaintiff's participation in a Chronic Health Conditions Group by video. The ALJ does not acknowledge that in the same note, the psychologist wrote, "Paul processed through ongoing health challenges. He reports health decline several months ago in which he was incapacitated and unable to join the group. He reports a slight improvement in energy in the past 3-4 weeks which he is feeling hopeful about, while pacing himself." A.R. 1055. The record the ALJ cited regarding Plaintiff's purported denial of joint pains in April 2021 documents an April 19, 2021 telehealth appointment at which the doctor noted, "Joint pains – has some RSI from being a musician." The ALJ leaves out that the doctor also noted, "[h]e can't travel without getting sick of having pain," "[p]hysical activity worsens his fatigue," and "[h]e has trouble standing." A.R. 859. The three records and hearing testimony cited by the ALJ provide little support for the ALJ's contention that "[t]he record reflects improvement in the claimant's condition."

The second reason, failure to follow medical recommendations, is also not a specific, clear and convincing reason for discounting Plaintiff's testimony. The ALJ wrote that during a November 2020 phone appointment, Plaintiff "denied an oral appliance for obstructive sleep apnea" and noted that Plaintiff's "failure to follow medical recommendations to improve his sleep suggests that his difficulties may not be as limiting as alleged." A.R. 26 (citing A.R. 654). The

record cited by the ALJ says, "Pt who initially wanted Oral appliance for OSA now declines it." However, the practitioner also noted that Plaintiff was "[s]eeking help with sleep" and that she was referring him for a consultation. A.R. 654. The records show that Plaintiff subsequently saw a doctor regarding insomnia in February 2021 who assessed him with "fatigue" and noted, "[c]linically, does not seem like a primary sleep issue. He is not sleepy but more fatigued during the day." A.R. 636. In other words, Plaintiff refused an oral appliance but continued to pursue treatment regarding his sleep issues, and a doctor assessed him with fatigue, not insomnia.

The ALJ's third reason, that the testimony is "inconsistent with medical evidence of record," is not a specific, clear and convincing reason for rejecting Plaintiff's testimony. The ALJ wrote that "[t]he record reflects many normal findings," but identified only one: "[t]he claimant had a normal x-ray of his cervical spine on August 4, 2021." A.R. 26 (citing A.R. 1008). The Ninth Circuit has held that "[a]lthough an ALJ may use '*inconsistent* objective medical evidence in the record to discount subjective symptom testimony,' the ALJ 'cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony.'" *Ferguson*, 95 F.4th at 1200 (emphasis in original) (quoting *Smartt*, 53 F.4th at 498). "Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Id*. (emphasis in original). Identifying a single record of a normal x-ray does not satisfy this standard.

The fourth and final reason the ALJ gave for discounting Plaintiff's testimony, Plaintiff's activities of daily living, is also not a specific, clear and convincing reason. The ALJ cited a Function Report—Adult—Third Party that Plaintiff's spouse, Sarah Garza, completed in October 2020. Garza reported that Plaintiff "did not need reminders to take care of personal needs and grooming and to take medications," "could do family zoom calls, text with friends, and meet in the park with friends," "went to the dog park and the corner store on a regular basis," "could manage his finances and could shop on the computer," and "could turn on the Roomba, take out the trash and vacuum on a good day." A.R. 26 (citing A.R. 290-97). The ALJ also noted that Plaintiff

6

"reported having a small birthday party in May of 2021" and "went on a trip to Vermont." A.R. 26 (citing A.R. 1087, hearing testimony." The ALJ wrote that Plaintiff's "decision to go on a trip, especially one requiring interstate travel, tends to further suggest that the alleged symptoms and limitations may have been overstated." A.R. 26.

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about [symptoms], because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. The court has instructed that "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quotation omitted). However, "the ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quotation omitted). The ALJ did not make any specific findings that Plaintiff's daily activities as reported by Garza in 2020 or that his ability to have a "small birthday party" and travel to Vermont are transferable to a work setting and thus did not satisfy this standard.

To the extent that the ALJ concluded that Plaintiff's activities suggested that Plaintiff's fatigue and exhaustion were not as disabling as he alleged (which is not clearly stated in the opinion), the court finds that such a conclusion is not supported by substantial evidence given other statements and testimony by Garza and Plaintiff. For example, Garza also wrote that Plaintiff "has a few hours where he can do stuff (walk the dog, make breakfast, maybe make some calls) and then he is completely wiped for the rest of the day. He really can't do anything in the afternoon/evening." A.R. 291. With respect to vacuuming, she wrote, "only on a very 'good' day . . . once every few months." A.R. 291. As to the ALJ's statement that Plaintiff "meet[s] in the park with friends," A.R. 26, Garza wrote "sometimes he can sit in the park w/friends for an hour or two . . . maybe once every 2-3 weeks?" A.R. 294. Plaintiff himself testified that in 2021, he moved in with his parents so that they could care for him full time, and that they prepare all of his

7

1  meals and clean up the dishes after he eats, do all of his laundry, and walk his dog when his wife is
2  out of town.  A.R. 41, 53-55; *see also* A.R. 1087 (9/17/21 note by Dr. Curtin that "[he] [h]ad to
3  move in with his parents because he couldn't prep food, was maybe able to shower twice a
4  week.").

5        Regarding Plaintiff's travel to Vermont, he testified that the travel was required to
6  complete his master's degree in music composition.  The master's degree program allowed him to
7  work from home with a one-week residency at the school in Vermont every six months.  The first
8  residency was in February 2018, prior to his onset date.  A.R. 42-43.  His final trip to Vermont
9  was in February 2020.  Plaintiff testified that during that trip, he was permitted to "miss a large
10 portion" of lectures and workshops and spent several hours in bed resting.  A.R. 45.  He also
11 testified that "[i]n retrospect" he should not have traveled, but that he "had invested time and
12 money into this program" and "used [his] sheer force of will to essentially push . . . through the
13 program."  Following the last trip to Vermont, Plaintiff testified that he had "a severe crash that
14 lasted several months after that."  A.R. 45.  As to Plaintiff's "small birthday party in May of
15 2021," Plaintiff reported to his doctor in September 2021 that "his family was in town" and that he
16 "crashed severely after until a few weeks ago."  A.R. 1087.

17       Ultimately, the ALJ failed to "show [their] work" with respect to the credibility
18 assessment.  *See Ferguson*, 95 F.4th at 1199.  That assessment is therefore not supported by
19 substantial evidence.  As the ALJ's error with respect to Plaintiff's credibility likely impacted the
20 ALJ's assessment of the medical opinion evidence from Plaintiff's physicians Drs. Judryn Racine
21 and Jennifer Curtin, the ALJ shall reconsider this issue on remand.
22 //
23 //
24 //
25 //
26 //
27 //
28

8

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. The Commissioner's motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: September 6, 2024



Donna M. Ryu
Chief Magistrate Judge